UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELVIS JONES,<br><br>                     Plaintiff,<br><br>v.<br><br>KROLL, et al.,<br><br>                     Defendants. | Case No.: 16-cv-02370-LAB (JLB)<br><br>**REPORT AND RECOMMENDATION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 22]** |

Plaintiff Elvis Jones ("Plaintiff"), a state prisoner proceeding *pro se* and *in forma pauperis*, filed a complaint in this Court on September 19, 2016, alleging civil rights violations pursuant to 42 U.S.C. § 1983 against Defendants Dr. T. Krall (erroneously sued as "Dr. Kroll") and Dr. C. Daub (erroneously sued as "Dr. Daubs"). (ECF No. 1 ("Compl.").) Plaintiff's complaint alleges that Defendants Dr. Krall and Dr. Daub violated his Eighth Amendment right to be free from cruel and unusual punishment when they failed to protect him from an attack by another inmate while housed at the Richard J. Donovan Correctional Facility ("RJD"). (*Id.*) Dr. Krall was dismissed from the case on May 11, 2017. (ECF No. 13.) Dr. Daub is the only remaining defendant.

///

///

Presently before the Court is Dr. Daub's Motion for Summary Judgment. (ECF No. 22.) In response to Dr. Daub's motion, Plaintiff filed an opposition. (ECF No. 24.) No reply was filed.

The Court submits this Report and Recommendation to United States District Judge Larry A. Burns pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1 of the Local Rules of Practice for the United States District Court for the Southern District of California. After a thorough review of the motion papers and evidence filed in support thereof, the Court **RECOMMENDS** Dr. Daub's Motion for Summary Judgment (ECF No. 22) be **GRANTED**.

I.  **STATEMENT OF FACTS**

  A.  **Plaintiff's Allegations**

In his Complaint, which he signed under penalty of perjury, Plaintiff alleges the following:

Dr. Daub, as part of the Interdisciplinary Treatment Team, was responsible for reviewing all incoming inmates and classifying them for the Enhanced Patient Program ("EOP"), which provides mental health services at RJD. (Compl. at 3-4.)

On September 7, 2013,[1] Plaintiff was attacked from behind by inmate Thomas, a member of the Los Angeles Crips. (*Id.* at 4, 11.) Plaintiff suffered a broken jaw and was transferred out of RJD to Alvarado Hospital. (*Id.* at 4-5.)

Between March and April 2014, Plaintiff received credible information that inmate Pride was attempting to transfer from the general population into the EOP population to harm Plaintiff, whom he held responsible for being placed up for transfer after being caught with a cellphone in his cell. (*Id.* at 5.)

---

[1] The Complaint alleges this assault occurred on September 17, 2014 (*id.* at 4) and September 7, 2014 (*id.* at 11), but according to Plaintiff's deposition testimony (ECF No. 22-5 at 5), the CDCR 602 Plaintiff submitted on April 6, 2014 (ECF No. 24 at 11), and Plaintiff's opposition to this Motion for Summary Judgment (ECF No. 24 at 3), the assault occurred on September 7, *2013*.

Plaintiff feared inmate Pride and brought his concerns to the attention of his EOP clinician, Dr. Graham. (*Id.*) Dr. Graham determined that inmate Pride was in fact meeting with Dr. Krall, and indicating to Dr. Krall that he needed mental health services as a ploy to harm Plaintiff. (*Id.*) Dr. Graham and Plaintiff thereafter met with Dr. Daub, Dr. Graham's direct supervisor. (*Id.*) Dr. Daub left Plaintiff with the impression that inmate Pride was a legitimate threat and danger and would not be accepted into the same EOP treatment program as Plaintiff. (*Id.* at 6.)

A week later, inmate Pride came before Dr. Daub and the Interdisciplinary Treatment Team and was accepted into the same EOP population as Plaintiff. (*Id.*) Plaintiff began receiving death threats from inmate Pride through other gang members already in the same EOP program. (*Id.*)

On April 6, 2014, Plaintiff submitted a CDCR 602 form complaining that Dr. Daub failed to protect his life and instead of protecting him, placed him in direct danger. (*Id.* at 7.) Captain Sanchez, upon investigating Plaintiff's CDCR 602 complaint, found that Plaintiff was in danger and housed him in administrative segregation for his safety. (*Id.* at 7-8.)

Plaintiff was attacked twice in Building #1 as a result of inmate Pride being in Building #2. (*Id.* at 8.)

Plaintiff claims that Dr. Daub, knowing that inmate Pride was a threat to Plaintiff, failed to report his findings to the correctional officers, who would have taken the information seriously, transferred inmate Pride out of RJD, and listed inmate Pride and Plaintiff as enemies. (*Id.* at 6-8.) Plaintiff contends that Dr. Daub claimed that he could not find any documentation listing inmate Pride and Plaintiff as enemies and therefore did nothing. (*Id.* at 7.) Plaintiff further claims that Dr. Daub "created a haven for gang member[s] who manipulated the system and preyed on [Plaintiff]." (*Id.* at 11.)

///
///
///

**B.     Summary of Uncontroverted Material Facts[2]**

Based on the evidence presented, the Court finds that the following material facts are uncontroverted for purposes of Dr. Daub's summary judgment motion.

Plaintiff is, and was at all times relevant to this lawsuit, a California state prisoner. (Compl. at 3; ECF No. 22-3, Declaration of Dr. C. Daub ("Daub Decl."), ¶ 9.)

In 2014, Plaintiff was housed at RJD and received mental health treatment through the EOP. (Compl. at 3-4; Daub Decl. ¶ 9.) Plaintiff was placed in Housing Unit 1 while in EOP at RJD. (Compl. at 8; ECF No. 22-5 at 3.) Dr. Daub was not his clinician or psychologist. (Compl. at 5; Daub Decl. ¶ 9.) Dr. Daub was not in charge of Plaintiff's treatment. (Compl. at 5; Daub Decl. ¶ 9.)

Dr. Daub is employed by the California Department of Corrections and Rehabilitation ("CDCR") as a senior psychologist, supervisor at RJD. (Daub Decl. ¶ 2.) During the times relevant to this lawsuit, Dr. Daub was the senior psychologist, supervisor for the EOP. (*Id.*; *see also* Compl. at 4, 6.)

The EOP is a mental health treatment program that provides care to mentally disordered inmates who would benefit from the structure of a therapeutic environment. (Daub Decl. ¶ 3; *see also* Compl. at 3.) The EOP is one of the highest levels of treatment available to inmates. (Daub Decl. ¶ 3.) Inmates in the EOP typically have a serious mental illness that is of long duration with moderate to severe and persistent functional impairments. (*Id.*) They may have crisis symptoms which require extensive treatment, but can be managed by outpatient therapy with several psychotherapy sessions or medication adjustment with follow-up visits. (*Id.*) Inmates in EOP have regular contact and visits

---

[2] These facts are derived from Plaintiff's verified complaint, the CDCR documents attached to Dr. Daub's Motion for Summary Judgment and Plaintiff's opposition to Dr. Daub's Motion for Summary Judgment, Plaintiff's Deposition, and Dr. Daub's Declaration.

with mental health professionals and must actively participate in their treatment to remain in the EOP. (*Id.*)

Inmates are typically referred to the EOP by a mental health professional. (*Id.* at ¶ 4.) Once referred, an Interdisciplinary Treatment Team comprised of several mental health professionals meets to evaluate the inmate and determine whether EOP placement is necessary. (*Id.*; *see also* Compl. at 4.) The review process includes a review of medical and mental health records, a review of treatment, a review of case factors, and an interview with the inmate. (Daub Decl. ¶ 4.) At RJD, EOP inmates are housed in an EOP building with other inmates in the program. (*Id.*)

Because placement in the EOP is determined by mental health needs, inmates of various backgrounds are included in the EOP program. (*Id.* at ¶ 5.) For example, the EOP includes gang members and non-gang members, older and younger inmates, and inmates of various religious beliefs. (*Id.*; *see also* Compl. at 4, ECF No. 22-5 at 6.) But inmates at RJD are already incarcerated with other inmates of similar security classification scores based on their criminal offenses and prison histories. (Daub Decl. ¶ 5.) Thus, inmates in the EOP are generally in the same or similar security classification levels. (*Id.*)

The decision of the Interdisciplinary Treatment Team on whether to place an inmate in the EOP is based solely on the mental health needs of the inmate. (*Id.* at ¶ 6.) The EOP is designed to provide intensive mental health treatment to those in need. (*Id.*) Thus, an inmate with documented and serious mental health needs cannot be deprived of treatment simply because other inmates object. (*Id.*)

Custody staff, i.e. correctional officers and prison officials, are in charge of the security of the EOP housing unit and run it just as securely as other housing units. (*Id.* at ¶ 7; *see also* Compl. at 6-7.) Per CCR Title 15, Section 3269, inmate housing assignments are a custodial function. (Daub Decl. ¶ 7; *see also* ECF No. 24 at 24, 27.) For example, custody staff determines who can share cells with whom, who can share the yard with whom, and so forth. (*Id.*) In addition, transfers to another EOP at a different institution requires a unit classification committee ("UCC") or institutional classification committee

("ICC") action. Both aforementioned committees are custodial entities. (*Id.*) Thus, all safety and housing issues are supervised and addressed by custody staff. (*Id.*) Mental health professionals simply make mental health decisions and provide treatment. (*Id.*)

As a senior psychologist supervisor of the EOP, Dr. Daub's job is to supervise the mental health professionals in the EOP. (*Id.* at ¶ 8; *see also* Compl. at 6.) He does not supervise custody staff. (Daub Decl. ¶ 8.) Also, he typically does not provide direct clinical treatment to inmates, and he does not supervise them. (*Id.*)

On September 7, 2013, Plaintiff and inmate Thomas, another EOP inmate, were involved in a physical altercation. (Compl. at 4-5; ECF Nos. 22-5 at 5; 24 at 11.) The altercation resulted in Plaintiff being hospitalized and suffering a broken jaw. (Compl. at 4-5; ECF No. 24 at 13.)

On November 3, 2013, Plaintiff and inmate Harmon were involved in a physical altercation. (ECF Nos. 22-5 at 7; 22-6 at 2-5.)

On February 14, 2014, Plaintiff and inmate Williams were involved in a physical altercation. (ECF Nos. 22-5 at 8-9; 22-6 at 6-9.)

After Plaintiff was involved in physical altercations with inmates Harmon and Williams, Plaintiff did not ask to get off the yard. (ECF No. 22-5 at 9-10.)

Plaintiff was not attacked by anyone else while he was in the EOP. (*Id.* at 10.)

The altercations with Harmon and Williams came before inmate Pride tried to enter the EOP. (*Id.* at 12.)

Inmate Pride was placed in the EOP on February 26, 2014. (Daub Decl. ¶ 12.) At that time, inmate Pride was already a participant in the mental health Correctional Clinical Case Management System ("CCCMS") program due to his documented history of mental health diagnosis and treatment. (*Id.*) CCCMS is a formal mental health program that is one step below the EOP. (*Id.*) The decision to place Pride in the EOP was made by the Interdisciplinary Treatment Team. (*Id.*) The Interdisciplinary Treatment Team members were Dr. E. Calix (staff psychologist/chair), Dr. T. Krall (staff psychologist), Dr. R. Rodriguez (staff psychiatrist), Correctional Counsel Nanquil, and Correctional Officer S.

Shafer. (*Id.*) Dr. Daub did not place inmate Pride in the EOP. (*Id.* at ¶ 13.) He was not on the team that made the decision and was not involved in the decision to place inmate Pride in the EOP. (*Id.*)

Upon being placed in the EOP, inmate Pride was assigned to Housing Unit 2. (ECF No. 22-5 at 13.) Plaintiff was in Housing Unit 1. (*Id.*) After inmate Pride was placed in the EOP, Plaintiff approached inmate Pride out on the yard. (*Id.* at 14.) Plaintiff told him "to get his money back" because "he wasted his money paying somebody to attack [Plaintiff] because [he] wasn't leaving." (*Id.*) Inmate Pride did not have any response. (*Id.*) He just "looked at [Plaintiff] stupid." (*Id.*) Inmate Pride did not attack Plaintiff. (*Id.* at 14-15.) That was the only contact Plaintiff had with inmate Pride while they were in the EOP together at RJD. (*Id.* at 15.)

On April 6, 2014, Plaintiff filed a CDCR 602 Form claiming that he was assaulted by inmate Thomas on September 7, 2013, on the orders of inmate Pride.[3] (Compl. at 7; ECF No. 24 at 11.) In the CDCR 602, Plaintiff requested an investigation into the conduct and non-caring attitudes of "both Dr.'s," adding: "It doesn't matter that Pride was not listed as my enemy. They had pre-hand information." (ECF No. 24 at 11.) Plaintiff stated that he received a threat in March 2013 from inmate Pride based on the fact that inmate Pride held him responsible for being caught with a cell phone and receiving an RVR. (*Id.* at 13.) Plaintiff stated that after he discovered inmate Pride was trying to manipulate Dr. Krall into putting him into the EOP, he contacted his clinician, Dr. Graham. (*Id.*) Plaintiff stated that Dr. Graham investigated his safety concerns, and reported them to Dr. Daub. (*Id.*) Plaintiff stated that Dr. Daub spoke with Dr. Krall and learned that inmate Pride was in fact trying to get into the EOP. (*Id.*) Plaintiff stated that Dr. Daub assured him inmate Pride would not be accepted into the same EOP as Plaintiff for safety and security reasons. (*Id.*) Plaintiff stated that he soon discovered that inmate Pride was transferred into the same EOP

---

[3] It appears this 602 Appeal was not processed until 2015. (*See* ECF No. 24 at 15-20.)

as him, where inmate Pride began threatening his life. (*Id.*) Plaintiff claimed that Dr. Daub jeopardized his safety when he failed to report the findings directly to custody. (*Id.* at 13-14.)

Plaintiff was transferred from the EOP to the Administrative Segregation Unit on May 2, 2014, after he informed staff that he had safety concerns. (Daub Decl. ¶ 14; ECF No. 22-6 at 10; ECF No. 24 at 23.) Specifically, Plaintiff reported during an interview with Sergeant Garvey that he had been a victim of a battery on September 7, 2013, and the inmate who ordered the battery was now in Housing Unit 2, Facility A. (ECF No. 22-6 at 10-11.) A CDC-114D administrative review was conducted on May 5, 2014, by Captain Sanchez. (ECF No. 22-6 at 10; *see also* Compl. at 7.) Plaintiff was retained in the Administrative Segregation Unit pending ICC review. (*Id.*; *see also* Compl. at 7-8.) The ICC determined that Plaintiff and his enemy should never come in contact with each other. (*Id.*) The ICC further elected to retain Plaintiff in the Administrative Segregation Unit due to safety concerns and refer him for a transfer. (*Id.*)

Plaintiff refused to add inmate Pride to his 812 enemies list before May 2, 2014. (*See* Daub Decl. ¶ 14; ECF Nos. 22-5 at 16; 24 at 23.) Inmate Pride was eventually added to Plaintiff's enemy list against Plaintiff's will. (ECF Nos. 22-5 at 16; 24 at 23.)

On June 16, 2014, Plaintiff was transferred from administrative segregation at RJD directly to the EOP program at Corcoran State Prison. (*Id.*; *see also* ECF No. 22-5 at 5.)

C.     **Summary of Controverted Material Facts**

Plaintiff claims that he spoke to Dr. Daub twice about inmate Pride. (ECF No. 22-5 at 15-17; Compl. at 5-7.) After Plaintiff learned that inmate Pride was attempting to enter the EOP, Plaintiff brought his concerns to the attention of his EOP clinician, Dr. Graham. (Compl. at 5.) Dr. Graham determined that inmate Pride was in fact meeting with Dr. Krall about entering the EOP. (*Id.*; *see also* ECF No. 22-5 at 17.) As such, Dr. Graham and Plaintiff met with Dr. Daub about Plaintiff's concerns. (Compl. at 6; *see also* ECF No. 22-5 at 15.) Dr. Daub left Plaintiff with the impression that inmate Pride was a legitimate

8

16-cv-02370-LAB (JLB)

threat and danger and would not be accepted into the same EOP treatment program as Plaintiff. (Compl. at 6; *see also* ECF No. 24 at 14.)

Plaintiff claims he spoke with Dr. Daub again after inmate Pride was already in the EOP. (ECF No. 22-5 at 15.) Plaintiff claims that he said the following to Dr. Daub: "You told me he would not be in this program." (*Id.* at 15-16.) Dr. Daub reportedly responded: "Oh, he's not on your enemy list." (*Id.* at 16; *see also* Compl. at 7.)

Dr. Daub does not recall having any conversations with Plaintiff about safety issues. (Daub Decl. ¶ 10.) If he did have a conversation, Dr. Daub contends that he would have advised Plaintiff to report and address the issue with custody staff. (*Id.*) Dr. Daub knows that inmates are advised to list any enemies they have on a CDCR 812 form that custody staff uses to help make safety and housing decisions. (*Id.*)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is appropriate if the materials in the record, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).

Each party's position as to whether a fact is disputed or undisputed must be supported by: (1) citation to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) a showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). If a party supports its motion by declaration, the declaration must set out facts that would be admissible in evidence and show that the affiant or declarant is competent to testify on the matters stated. Fed. R. Civ.

P. 56(c)(4). An affidavit will not suffice to create a genuine issue of material fact if it is "conclusory, self-serving . . . [and] lacking detailed facts and any supporting evidence." *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

When a defendant seeking summary judgment has carried its burden under Rule 56(c), the burden shifts to the plaintiff who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The plaintiff "must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita*, 475 U.S. at 587 (internal citation omitted). If the plaintiff fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 325. "The Court may . . . grant an unopposed motion for summary judgment if the moving party's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact." *Hupp v. San Diego Cty.*, No. 12cv0492 GPC (RBB), 2014 WL 3573337, at *7 (S.D. Cal. July 21, 2014) (citing *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001)).

A verified complaint may be used as an opposing affidavit under Rule 56 to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence. *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam). To "verify" a complaint, the plaintiff must swear or affirm that the facts in the complaint are true "under the pains and penalties of perjury." *Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995).

## III. ANALYSIS

A prison official violates an inmate's Eighth Amendment right to be free from cruel and unusual punishment when he acts with deliberate indifference to a substantial risk of serious harm to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The deliberate indifference standard involves both an objective and subjective prong. *Id.* at 834. Under the objective prong, the alleged deprivation suffered as a result of the official's act or

10

16-cv-02370-LAB (JLB)

omission to act must have been "sufficiently serious." *Id.* Under the subjective standard, the prison official must have had a "sufficiently culpable state of mind," which, in the context of prisoner § 1983 cases, is one of deliberate indifference. *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). To act with deliberate indifference, a prison official must know of and disregard an excessive risk to an inmate's health or safety. *Id.* at 837. That is, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and draw the inference. *Id.* "[D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005).

Liability under § 1983 arises only upon a showing of personal participation by the defendant. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Within the context of § 1983, a person subjects another to the deprivation of a constitutional right only "if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Preschooler II v. Clark Cty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

Here, Dr. Daub argues that he was not deliberately indifferent to Plaintiff's safety for several reasons. First, Dr. Daub claims that he could not have been deliberately indifferent to events that occurred before his involvement and to something of which he had not been informed. (ECF No. 22-1 at 8.) Dr. Daub relies on Plaintiff's admissions that he was only attacked in the EOP before inmate Pride was transferred into the EOP, and before he notified Dr. Daub of his safety concerns. (*See id.* at 8, citing ECF No. 22-5 at 3-21.) "The Eighth Amendment imposes a duty on prison officials to protect inmates from violence at the hands of other inmates." *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015) (citing *Farmer*, 511 U.S. at 833). However, a prison official cannot be found liable under the Eighth Amendment unless he "*knows of* and disregards an excessive risk to

inmate health or safety." *Farmer*, 511 U.S. at 837 (emphasis added). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Plaintiff does not contend that Dr. Daub was aware, or should have been aware, of his dispute with inmate Pride or any risk to his safety until after he was attacked by inmates Thomas, Harmon, and Williams. (*See* ECF No. 22-5 at 17.) Plaintiff admits that he and Dr. Graham did not approach Dr. Daub with his safety concerns until after the last attack by inmate Williams. (*See id.*) As such, the Court finds that Plaintiff has failed to raise a genuine issue of material fact that Dr. Daub was deliberately indifferent to his safety at the time he was attacked by inmates Thomas, Harmon, and Williams.

Second, Dr. Daub argues that he was not deliberately indifferent to Plaintiff's safety because Plaintiff was never attacked after inmate Pride entered the EOP. (ECF No. 22-1 at 8.) In his deposition, Plaintiff admits that he was never attacked after inmate Pride was transferred into the EOP. (ECF No. 22-5 at 10, 12, 15.) Plaintiff also admits that he was never attacked after he first spoke to Dr. Daub. (*Id.* at 10, 12, 14-17.) Further, Plaintiff does not contend that he is presently at risk. (*See id.* at 10-11.)

In *Babcock v. White*, the Seventh Circuit squarely addressed the question of "whether or not a . . . prisoner who was not assaulted by, and who is no longer at risk from, fellow inmates may nevertheless maintain a . . . claim for money damages based solely on prison officials' past failure to take measures to protect the prisoner from inmates known to pose a danger to the prisoner." 102 F.3d 267, 270 (7th Cir. 1996). The plaintiff in *Babcock* was threatened by members of the Mexican Mafia, but never physically attacked. *Id.* at 268-70. The court concluded that the plaintiff's allegations did not give rise to a compensable claim under the Eighth Amendment because "it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment." *Id.* at 272; *see also Grimes v. Pfiel*, No. CV 05-2843 PA (PJW), 2011 WL 13140721, at *1 (C.D. Cal. May 31, 2011), *aff'd*, 502 F. App'x 701 (9th Cir. 2013) (granting summary judgment for defendants because "even assuming that [the

plaintiff] had a legitimate fear that he might be attacked, he cannot succeed on his claim of deliberate indifference because the risk to his safety never materialized"); *Rodrigues v. Norwood*, No. EDCV 10-629-R(MAN), 2010 WL 2740174, at *3 (C.D. Cal. July 9, 2010) (dismissing claim for deliberate indifference where plaintiff alleged that he feared for his life when defendant prison officials returned him to general prison population, but did not suffer attack); *Henslee v. Wilson*, No. 08CV1015-IEG-LSP, 2009 WL 347003, at *3 (S.D. Cal. Feb. 5, 2009) (Gonzalez, J.) (finding *Babcock* persuasive and dismissing claim for deliberate indifference where plaintiff alleged that defendant prison officials failed to protect him from *potential* attack from cellmate).

As in *Babcock*, Plaintiff here alleges "not a failure to prevent harm, but a failure to prevent exposure to risk of harm." *Babcock,* 102 F.3d at 272 (internal citation omitted). The Court is persuaded by the reasoning set forth in *Babcock*, and therefore concludes that Plaintiff's allegation that Dr. Daub failed to prevent exposure to the risk of harm by inmate Pride "does not entitle [him] to monetary compensation." *Id.*

The Court acknowledges that the Supreme Court has differentiated cases in which the plaintiff is seeking injunctive relief, finding that a prisoner seeking a remedy for unsafe conditions need not await a tragic event, such as an actual assault, before obtaining relief. *See Farmer*, 511 U.S. at 845 (citing *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993)). However, Plaintiff does not seek injunctive relief in his Complaint and admitted in his deposition that he was no longer at risk after his transfer to Corcoran on June 16, 2014. (*See* Compl. at 13; ECF No. 22-5 at 10-11.)

Based on the foregoing, the Court finds that Plaintiff has failed to come forward with specific facts showing that there is a genuine issue for trial. Therefore, Dr. Daub is entitled to judgment as a matter of law.[4]

---

[4] As the Court found Dr. Daub entitled to judgment as a matter of law after analyzing his first two arguments, the Court does not address his remaining arguments. (*See* ECF No. 22-1 at 8-9.)

13

## IV. CONCLUSION

For the reasons discussed above, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) accepting this Report and Recommendation; and (2) **GRANTING** Defendant's Motion for Summary Judgment (ECF No. 22).

**IT IS ORDERED** that no later than **November 2, 2018**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **November 16, 2018**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: October 19, 2018

*[Signature]*

Hon. Jill L. Burkhardt
United States Magistrate Judge